UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                                                     09-cr-161

JOSE EUGENIO TORIBIO-TORIBIO,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

On August 4, 2009, the Court issued a decision from the bench granting Defendant's motion to suppress statements he made to Officer Jon Hill on November 26, 2008. The Court found that Defendant was in custody and that the questioning was conducted by officers who were aware of the potentially incriminatory nature of the disclosures sought. Presently before the Court is the government's motion for reconsideration on the ground that eliciting pedigree information does not implicate the requirement that Miranda warnings be provided.

Before proceeding to the grounds for the government's motion, the Court will first supplement the basis for its August 4, 2009 decision. The Court is aware that mere incarceration may not be sufficient to satisfy the "in custody" requirement. United States v. Rodriguez, 356 F.3d 254, 258-59 (2d Cir. 2004). Under the facts and circumstances of this case, however, the Court finds that Defendant was in custody at the time of the questioning. This conclusion is supported by the facts that: (1) Officer Hill arranged with the New York State Department of Corrections to interview Defendant; (2) the interview was conducted in a

small office that was customarily used as an interview room; (3) at the time of the interview, there were two corrections officers and two federal agents present (including Officer Hill); (4) Officer Hill sat across the table and directly in front of Defendant; (5) Defendant was flanked by a corrections officer on one side of Defendant and the other federal law enforcement officer on the other side; (6) there was no evidence that Defendant "voluntarily" went to the meeting, but, rather, that he was escorted there by a corrections officer; (7) the Defendant was never informed that the questioning was voluntary or that he was free to leave; (8) the interview was initiated by the government; and (9) the Defendant has limited English speaking skills.  See United States v. Chamberlain, 163 F.3d 499, 503 (8th Cir. 1999).  These circumstances suggest a measure of compulsion above and beyond Defendant's ordinary incarceration.  United States v. Willoughby, 860 F.2d 15, 24 (2d Cir. 1988).  The Court, therefore finds that, considering the totality of the circumstances, Defendant was in custody.

       The second inquiry focuses on Officer Hill's awareness of the potential incriminatory nature of the disclosures sought.  Unlike in United States v. Rodriguez, 356 F.3d 254, 259 (2d Cir. 2004), here, there was evidence that prior to interviewing Defendant, Officer Hill knew that Defendant had falsely represented his name and citizenship.  Indeed, Officer Hill knew (or believed) that Defendant was registered with the Department of Corrections under a false name.  At the time of the interview, Officer Hill knew that  (1) Defendant was claiming to be Raymond Hernandez Pagan, a United States citizen; (2) Pagen used several aliases, including Jose Toribio; (3) an individual named Jose Toribio Toribio entered the United States on a visa from the Dominican Republic on February 24, 2004; and (4) Officer Hill had pictures of Pagan from the New York State Criminal Justice Repository Inquiry and the State Department's NIV Application Detail and knew that the

person in the pictures closely resembled one another. Furthermore, there was testimony that the New York State Corrections Officer who was present advised Officer Hill that he could distinguish between a Puerto Rican and Dominican dialect, thereby suggesting that Hill was specifically looking to determine whether Defendant was from the Dominican Republic, rather than from Puerto Rico. Based upon this knowledge, the circumstances were such that questioning concerning Defendant's citizenship, or birthplace, was likely to elicit an incriminating response.

The Court will now address the government's motion for reconsideration on the ground that basic pedigree information is not subject to Miranda. The Second Circuit has noted "the well-settled principle that pedigree information solicited through routine questioning of arrested persons by law enforcement officers at the booking stage does not implicate the protections of Miranda." Rodriguez, 356 F.3d at 259 n.2. Similarly, in United States v. Kadem, 317 F. Supp.2d 239 (W.D.N.Y. 2004), the court held that basic pedigree information was not subject to Miranda warnings. However,

> recognizing a booking exception to Miranda does not mean . . . that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. . . . To determine whether the police abused the gathering of pedigree information in a manner that compels Miranda protection requires an objective inquiry: Should the police have known that asking the pedigree questions would elicit incriminating information.

Rosa v. McCray, 396 F.3d 210, 222 (2d Cir. 2005) (internal quotations and citations omitted).

Rodriguez and Kadem are distinguishable. In Kadem, there was no evidence that the investigator knew the person that had been brought into the interrogation room. 317 F. Supp.2d at 241. There also was no evidence that the investigator was present for any

purposes other than to "simply ascertain the name and identity of the person who might well have issues concerning citizenship." Id. at 242. In Rodriguez, the "result of [the] interview . . . was consistent with the purpose of the interview: Rodriguez was deported administratively." 356 F.3d at 259. Similarly, in Rodriguez, the law enforcement officer was unaware of the incriminatory nature of the questioning and, in fact, "[t]he information disclosed did not become relevant to a criminal proceeding . . . until three years later, when Rodriguez broke the law by fraudulently attempting to reenter the United States. . . ." Id.

      Here, by contrast, Officer Hill had pictures of Defendant. He also had information concerning Defendant's identity from the Department of Corrections and the Department of State. Accordingly, Officer Hill was reasonably aware of who he was interviewing. Further, although Officer Hill was primarily looking into administrative deportation, he had ample reason to believe that Defendant was falsely representing his citizenship and knew that such a false representation could give rise to criminal charges. Indeed, the government obtained an Indictment based on the November 26, 2008 interview shortly after it occurred. Moreover, given the aforementioned facts, obtaining basic pedigree information in this case was not just obtaining necessary background information, but was likely to provide the primary evidence supporting any violation of § 911. In a § 911 case, questions pertaining to place of birth go beyond basic pedigree information and go to the heart of the crime itself. This was not pedigree information obtained during the "non-investigative booking process that typically follows a suspect's arrest." Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005). To the contrary, the "pedigree" information was asked after Officer Hill administered an oath to Defendant and in the course of an investigation. Because, in this case, basic pedigree information was likely to elicit an incriminating response, Miranda warnings were required.

<u>Id</u>. at 222.  Defendant was in custody and did not receive <u>Miranda</u> warnings.  Accordingly, his statements to Officer Hill must be suppressed.

The sole basis of the Superseding Indictment in this case is Defendant's having falsely represented himself to be a citizen of the United States "on or about November 26, 2008" "during a Department of Homeland Security Immigration Inspection."  Because the statements from that inspection have been suppressed, there is no admissible evidence in support of the Indictment and the Indictment must, therefore, be DISMISSED.

For the foregoing reasons, Defendant's motion to suppress is GRANTED, the government's motion for reconsideration is DENIED, and Defendant's motion to dismiss the Indictment is GRANTED.

IT IS SO ORDERED.

Dated:August 6, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge